UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC. and TIM MAK,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>    Defendant. | Civil Action No. 19-17 (JDB) |

## ORDER

This case arises out of several requests for documents submitted by plaintiffs National Public Radio, Inc. and its journalist Tim Mak (together, "NPR") to the United States Department of the Treasury ("Treasury") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, between May and August 2018. See Compl. [ECF No. 1] ¶¶ 13–28. NPR's FOIA requests pertain to a number of individuals and companies from Russia and the United States that were allegedly involved in a "Russian campaign of influence in the United States" leading up to the 2016 elections, as well as actions taken by Treasury in response, including the imposition of sanctions. Id. ¶ 11–12. NPR filed suit in January 2019 after Treasury failed to produce any documents or provide substantive responses to NPR's requests. See id. ¶¶ 17–18, 21, 24, 27.

Months of subsequent discussions over a proposed timetable for production resulted in an impasse between the parties, which the Court resolved in August 2019. See Order (Aug. 22, 2019) [ECF No. 16] at 1–2. The Court ordered Treasury to "review documents at a rate of 3,000 [pages] per month," resulting in a production timetable of approximately seventeen months. Id. at 4. The Court characterized the seventeen-month production horizon as "still a long time to wait, but reasonable in light of the circumstances." Id.

1

Over the subsequent months, Treasury largely met its document-review obligations under the Court's Order, requesting and receiving a handful of deadline extensions with NPR's consent. See Pls.' Mot. to Compel Def. to Promptly Produce "Referred" Documents ("Mot. to Compel") [ECF No. 20] at 2.  As of March 12, 2021, Treasury had "reviewed more than 60,000 pages of records for responsiveness in this case and processed over 11,000 pages of responsive records." Decl. of Marshall H. Fields, Jr. ("Fields Decl.") [ECF No. 25-1] ¶ 17.  Meanwhile, as it made productions to NPR, Treasury indicated that a substantial number of documents were being "referred out to other agencies for 'consultation' or to outside organizations through the 'submitter notice process' (collectively, the 'Referred Documents')."  Mot. to Compel at 2.  Cumulatively, Treasury purported to have withheld 2,592 pages of Referred Documents of which only 287 have been later produced after consultation with other stakeholders.  Decl. of Alia L. Smith ("Smith Decl.") [ECF No. 20-1] ¶ 5.

As the production timeline of "17 months or so" envisioned in the Court's August 2019 Order drew to a close, see Order (Aug. 22, 2019) at 4, NPR's counsel requested "an estimate of when these Referred Documents might be produced," but "Treasury has declined to provide any such estimate or agree to any deadline for production."  Smith Decl. ¶ 6.  Accordingly, on February 12, 2021, NPR moved to compel Treasury "to process the 'referred' documents, determine what material reasonably may be withheld under FOIA's exemptions, and produce the rest to NPR within 30 days."  Mot. to Compel at 4.  Treasury urges the Court to "permit [it] to continue its consultation/coordination and submitter notice processes, and deny Plaintiffs' Motion."  Def.'s Opp'n to Pls.' Mot. to Compel ("Opp'n") [ECF No. 25] at 2.

Of relevance here, Treasury's regulations governing FOIA response procedures provide two mechanisms for involving stakeholders outside of Treasury in the disclosure decision-making

process.  First, the "component" within Treasury tasked with responding to a request "should typically consult with" any agency or office with an interest in the requested records "prior to making a release determination."  31 C.F.R. § 1.3(d)(1).  This provision is silent as to how much time a consultation may or should take.  Separately, Treasury is required to provide notice to "submitters"—persons or entities who have submitted confidential commercial information to Treasury that becomes part of Treasury records—and provide the submitter an opportunity to object to disclosure of its information.  Id. § 1.5(a)–(b), (d).  For this process, Treasury must "specify a reasonable time period . . . within which the submitter must respond," at the expiration of which the submitter "shall be considered to have no objection to disclosure of the information." Id. § 1.5(d).  Here, Treasury allowed submitters ten business days to object to disclosure, and by the date of this Order, the time for objecting will have elapsed as to all outstanding notices.  See Fields Decl. ¶¶ 29, 35.[1]  Hence, inasmuch as they are not also awaiting consultation from other agencies, all of the Referred Documents withheld pending the submitter notice process should be ready for Treasury to review and produce in the ordinary course of complying with the Court's prior Order.  But that still leaves open the question of how to treat documents awaiting consultation.

Treasury argues that, because it "has followed its standard consultation/coordination procedure, mandated by regulation," it should not be compelled to produce the Referred Documents awaiting consultation at this time.  Opp'n at 11.  Although the Court recognizes Treasury's adherence to the regulatory regime and commends Treasury's diligence in meeting its processing obligations—especially in light of the challenges posed by the COVID-19 pandemic—

---

[1] Treasury states that it received responses to nine of the thirteen submitter notices it sent out, and that the period for objection had expired as to three more.  Fields Decl. ¶ 35.  The period for objecting to the lone submitter notice that was pending on March 12 when Fields executed his declaration will have now elapsed.  See id.

it cannot give Treasury carte blanche to let the consultation process play out without any time restraints.  This is especially true now, more than three years after NPR submitted its first FOIA request.  See Compl. at ¶¶ 13, 20, 23, 26.  As the Court remarked in its August 2019 Order, courts "have rejected 'the notion that the decision of practicability is to be determined solely by the agency.'"  Order (Aug. 22, 2019) at 4 (quoting Elec. Priv. Info. Ctr. v. Dep't of Just., 416 F. Supp. 2d 30, 38 (D.D.C. 2006)).  This Court has "the authority 'to impose concrete deadlines on agencies that delay the processing of requests meriting expedition,'" id. (quoting Elec. Priv. Info. Ctr., 416 F. Supp. 2d at 38), and has already found reason to do so here to prevent "the information plaintiffs seek" from becoming "'history' rather than 'news,'" id.  As the agency that received NPR's request, Treasury "is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request."  Plunkett v. Dep't of Just., 924 F. Supp. 2d 289, 305 (D.D.C. 2013).  Notwithstanding the gravity of the potential law-enforcement and national-security interests at stake in the disclosure of documents at issue here, Treasury "is not absolved of its obligations under FOIA" to timely produce the requested records solely because it has "refer[red] the documents elsewhere" for consultation.  See Keys v. Dep't of Homeland Sec., 570 F. Supp. 2d 59, 70 (D.D.C. 2008); see also Plunkett, 924 F. Supp. 2d at 305 (The consultation process does not excuse production of records if its "net effect" is "significantly to increase the amount of time [plaintiff] must wait to obtain them.") (quoting Peralta v. U.S. Atty's Off., 136 F.3d 169, 175 (D.C. Cir. 1998)).

Still, the Court is sensitive to the countervailing interests at stake which may require input from agencies outside Treasury and will stop short of compelling production of documents awaiting consultation at this point.  Treasury reports that it has already received responses to twenty-six of its thirty-seven consultation requests.  Fields Decl. ¶¶ 32–33.  Those documents are

4

therefore no longer "awaiting consultation" and can be processed in the ordinary course along with the submitter-notice documents as described above.[2] But with respect to the remaining eleven outstanding consultation requests, Treasury must detail their status and provide a concrete timetable for processing and production within thirty days after making its final ordinary production on April 26.  See Min. Order (Mar. 29, 2021).  Within that set, the Court expects that documents awaiting consultation by "other components of Treasury," see Smith Decl. Ex. A [ECF No. 20-2] at 7, will be scheduled for processing imminently if not already processed.  For all other Referred Documents, Treasury must actually consult with the interested agencies to set deadlines for review and inform the Court of any extenuating circumstances complicating the process.  The Court intends this Order to motivate both Treasury and the agencies from which it is awaiting input to finally respond to NPR's now nearly three-year-old requests; if not, the Court stands ready to intervene further as necessary to bring this matter to a timely close.

Hence, upon consideration of [20] plaintiffs' motion to compel defendant to promptly produce "referred" documents, and the entire record herein, it is hereby **ORDERED** that the motion is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that Treasury shall process by not later than May 26, 2021, (1) all documents for which it has received responses to its consultation/coordination requests by April 26, 2021, and (2) all documents previously withheld pending processing through the submitter notice process; and it is further

**ORDERED** that Treasury shall submit a status report by not later than May 26, 2021, detailing the status of all remaining outstanding consultation/coordination requests including (1) number of pages; (2) the date first referred for consultation; (3) the name of the consulting

---

[2] Based on the numbers reported in NPR's motion, see Smith Decl. ¶ 5, these documents together should total approximately 2,305 pages—less than the 3,000 pages Treasury is tasked with processing per month.

agency where disclosable in accordance with 31 C.F.R. § 1.3(d)(3); (4) the consulting agency's estimated time for responding and any circumstances giving rise to significant delays; and (5) Treasury's estimated time for processing and production thereafter.

**SO ORDERED**.

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: March 31, 2021